# Decatur Building & Investment Co. v. Neal.

*Action for Breach of Contract to Allow Withdrawal of Money Paid for Stock.*

1. *Notice of withdrawal not equivalent to a withdrawal of stock.*—Where the by-laws of a building association allowed stockholders to withdraw their stock on giving sixty days notice of their intention to do so, the notice of an intention to withdraw does not sever the relation of the stockholder, giving the notice with the corporation.

2. *Waiver of right to withdraw as a stockholder.*—Active participation in meetings of the stockholders of a corporation by a stockholder who several months before had given notice of an intention to withdraw his stock, is a waiver of the right of withdrawal.

APPEAL from City Court of Decatur.
Tried before Hon. W. H. SIMPSON.
Action by Mrs. J. St. Clair Neal, against the Decatur Build-

[Decatur Building and Investment Co. v. Neal.]

ing & Investment Co. for the withdrawal value of fourteen shares of stock. The demurrers to the third and fourth pleas set forth in substance that the plaintiff was not a stockholder after the notice of withdrawal had been given by her.

JOHN C. EYSTER, for appellant, cited Cook on Stock, 52; *Thames v. Ins. Co.* 49 Ala. 577; *M. & C. R. R. v. Grayson,* 88 Ala. 576; *Robertson v. Bradford,* 73 Ala. 116; 7 Am. & Eng. Ency. 99; Morawetz, 630.

KYLE & SKEGGS, for appellee, cited 2 Am. & Eng. Ency. 624; *Loan Co. v. Lake,* 69 Ala. — *U. S. Association v. Seligman,* 1 Am. St. Rep. 776; *Burgess v. Seligman,* 107 U. S. 20.

STONE, C. J.—The purpose of this suit by the appellee was to recover of the appellant corporation the money she had paid in the purchase of fourteen shares of its capital stock. No question is raised on the fact or amount of the money— $560—she claims to have paid the corporation for the fourteen shares of stock.

The complaint contains two common and one special count. The special count avers "that in the month of March, 1888, plaintiff bought of defendant and fully paid for fourteen shares of the capital stock of defendant at forty dollars per share, which said stock was issued and delivered to plaintiff by defendant, . . . bearing on the face thereof in writing the words, 'paid up in full.' And the plaintiff avers that at the time of the purchase of aforesaid stock defendant promised and agreed that at any time thereafter, on sixty days notice, plaintiff might and could withdraw the said stock, and upon such withdrawal defendant would pay plaintiff the amount she had paid on and for said stock, together with interest at eight per cent. *per annum.* And plaintiff avers that on the 3rd day of July, 1888, she gave defendant notice of the withdrawal of her said stock, but defendant has not paid." This suit was commenced November 29, 1889.

A demurrer to the complaint was sustained, and a slight amendment made. We consider it unnecessary to make further reference to this ruling.

Pleas 1 and 2 were filed by defendant April 8, 1891. No. 1 is the general issue. No. 2 is a special plea. It avers that "prior to July 3, 1888, a meeting of the stockholders of defendant was held at its office, and at said meeting it was agreed by said stockholders that no more withdrawals of stock should be made by the owners of stock in defendant

[Decatur Building and Investment Co. v. Neal.]

until certain demands and claims against defendant were settled from its income of rents, to save expense of litigation; and a resolution to this effect was passed by the said shareholders; and at said meeting the stock of plaintiff was represented and voted, at plaintiff's request, for said resolution." The plea then avers that said resolution was and is still in force, and that "said demands were unsettled at the time of the institution of this suit, and are yet unsettled." A demurrer to this plea was sustained. It is possible this plea is too vague and indefinite in its averments, if it be otherwise good. We need not decide this question.

On June 5, 1891, defendant interposed pleas 3, 4 and 5. Demurrers were interposed to each of these pleas, which were sustained.

Plea No. 3, averred "That on July 3rd, 1888, a by-law of defendant was in existence authorizing subscribers to withdraw said stock, after having first given defendant 60 days notice in writing of said contemplated withdrawal. . . That a meeting of the stockholders of defendant was held at the office in New Decatur, on January 15, 1889, at which meeting the stock of the plaintiff was represented by proxy S. H. Brosius, he being the proxy and attorney in fact of the plaintiff in said meeting, and authorized to vote said stock. . . . That thereafter, at a meeting of the stockholders held on the 7th day of May, 1889, at which said meeting the stock of plaintiff was represented by C. W. Joseph, who was plaintiff's attorney, proxy and attorney in fact, authorized to vote said stock at said meeting, a resolution was passed by said stockholders repealing said section 3 article 4 of defendant, the stock of the plaintiff being voted by said Joseph for the resolution." The plea then sets forth other resolutions adopted at said meeting, in the passage of which plaintiff's stock was voted by Joseph, and concludes with the averment that C. W. Joseph was "plaintiff's proxy and attorney in fact duly authorized in the premises."

The 4th plea avers that plaintiff gave notice to defendant on July 3, 1888, that she elected to withdraw her stock from the corporation; that afterwards, at a stockholders' meeting held January 15, 1889, and after defendant had notified her of its inability to repay to her the money she had paid for her stock, she had herself represented, and her stock voted by Brosius her proxy and attorney in fact; that one resolution, introduced by Brosius, and in favor of which he voted her stock, was adopted at that meeting, which had put a stop to the collection of monthly dues from the stockholders, and thereby disabled the corporation to make pay-

ment to those stockholders who had given notice of their intention to withdraw their moneys ; and that she had herself and her stock represented and voted at the stockholders' meeting May 7, 1888, by C. W. Joseph, her proxy and attorney in fact. These alleged acts of hers are pleaded as an estoppel against her maintenance of the present suit.

Plea No. 5 might possibly present an infirmity in the cause of action asserted in this suit, if the corporation was then insolvent, and creditors were the complaining parties. Cook on Stock and Stockholders, §§ 309 *et seq.* Presented as the question is in this record we will not further consider it. We will confine what we have to say further chiefly to the defense set up in pleas 3 and 4.

The argument of appellee's counsel shows that the sufficiency of the defense mainly relied on in this case, according to their construction of it, must be tested by the principles which obtain in estoppels *in pais.* In this we think they are in error. Conceding the binding validity of the by-law which permitted the withdrawal of stock from the corporation by giving sixty days notice of such intention, what is shown in the pleadings and evidence to have been done by Mrs. Neal, did not constitute the withdrawal an accomplished fact. It was at most, only a declaration of intention to withdraw, accompanied with notice of that intention. If nothing else had been done, she would not by the mere notice, have ceased to be a stockholder. She was still the owner of the stock, although she had put herself in position to claim the money at the end of sixty days, The *status* of the question was not determined and fixed,—it was *in fieri.* To maintain her status, however—her right to withdraw her capital stock—she must do nothing incompatible with that right. She had asserted her intention to cease to be a stockholder, and, to be consistent, she must abstain from asserting the rights—from exercising the active functions—which pertain to continued ownership of the stock.

We have said the question of withdrawal *vel non* was *in fieri.* It had not passed beyond the pale of negotiation. It was still open to a change of purpose, of intention and of the end to be attained. Contracts and dealings between persons, whether natural or artificial, until completely executed, or even after compliance with their terms, are open to change and modification by mutual agreement, and such changes or modifications require no other consideration to uphold them than the mutual agreement of the parties. And such agreement of change need not necessarily be express. It may be implied from circumstances or the con-

[Decatur Building and Investment Co. v. Neal.]

duct of the parties.—3 Brick. Dig. 152, § 146; *Bryant v. Stephens*, 58 Ala. 636; *Badders & Britt v. Davis*, 88 Ala. 367; *Coleman v. Siler*, 74 Ala. 435; *Lehman v. Van Winkle*, 92 Ala. 443; *Hembree v. Glover*, 93 Ala. 622; *Phœnix Ins. Co. v. Copeland*, 90 Ala. 386.

In *Byrd v. McDaniel*, 26 Ala. 582, the bill had been dismissed for want of prosecution. Subsequently the defendant crossed interrogatories propounded by complainant to witnesses and entered actively into a defense of the case. Held that this restored the case to the docket. See also *Nat'l Com. Bank v. McDonnell*, 92 Ala. 387.

We hold that the acts set forth in the third and fourth pleas, if proved to be true, and if shown to have been done with Mrs. Neal's procurement or approbation, constitute a waiver of any right she may have had under the by-law and the notice she gave July 3, 1888, to withdraw from the corporation the money she had invested in its stock. We do this, not on account of the language of the resolutions adopted at the meetings of January 15th and May 7th, 1889. Those resolutions being somewhat out of the ordinary routine of corporate action, it may admit of question whether she would be bound by them, unless she had authorized her votes to be so cast, or ratified the action after being notified of what was done.—1 Mor. Corp. §§ 486 *et seq.*; Cook, Stock and Stockholders, §§ 610 *et seq.* We need not and do not decide this. We place our ruling on the broader ground, averred in these pleas, that she, through her proxies, knowingly and intentionally participated as a stockholder in the deliberations of these stockholders' meetings, which were held severally six and ten months after she gave notice of her intention to withdraw. These acts, if done with her authority or approbation, were a waiver of her right to withdraw her moneys under the notice she gave July 3, 1888. The City Court erred in sustaining the demurrers to pleas 3 and 4.

Reversed and remanded.